UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No.:   9:22-CR-253 |
| | ) | |
| | ) | **MOTION TO DISMISS INDICTMENT** |
| vs. | ) | for *BRADY* violations |
| | ) | |
| **XAVIER KASEEM CAPERS** | ) | |

The Defendant, XAVIER KASEEM CAPERS, by and through his undersigned attorney, hereby moves the Court, pursuant to Federal Rule of Criminal Procedure Rule 5(f), *Brady v. Maryland*, 373 U.S. 83 (1963), and this Court's Order found at Dkt. Entry # 23 for an Order dismissing the indictment in this case due to a violation of the Defendant's rights to Due Process. Specifically, the Defendant alleges that the Government provided the Defendant with a document that has been altered and was therefore highly misleading. The government was prepared to introduce this exhibit into the trial slated to begin tomorrow.

### I.     Procedural History

The indictment charges Xavier Capers with two counts. Count One alleges that he conspired with Joseph Bailey to possess with intent to distribute over 50 grams of methamphetamine on March 6, 2021 until the indictment on March 23, 2022. Count Two alleges that on March 6, 2021, Capers and Bailey possessed with intent to distribute 50 grams or more of methamphetamine, and aided and abetted each other in that offense.

### II.     Facts

The facts have been well laid out elsewhere regarding the allegations. However, additional facts regarding the discovery process will assist the Court in deciding this motion. In

the fall of 2022, counsel for Co-Defendant Bailey requested a copy of the key logs for March 6, 2021, the date in question. On December 7, 2022, South Carolina Department of Corrections (SCDC) Special Agent Shane McDowell provided DEA Agent Adam Hardin with copies of the key log from May 6, 2021. See Ex. A, hereinafter Key Log #1.  On January 11, 2023, an attorney for the government forwarded the Defense copies of Key Log #1, not Bates stamped.  See Ex. B, Key log provided January 11. The government produced the same version Key Log #1 on May 22, 2023, and June 8, 2023 but with Bates numbers this time.

On June 2, 2023, counsel for Bailey subpoenaed copies of all key logs from January 1 – March 10 of 2021 pursuant to an *ex parte* sealed order by Judge Norton.

Counsel for Bailey received documents responsive to that subpoena on June 15, 2023, while the parties were selecting the jury. Counsel for Bailey reviewed these documents on the evening of June 18 as he prepared to produce the same to all parties. The documents were produced to all parties in the early hours of June 19. Counsel for Bailey realized that the production of the March 6 Key Log from SCDC (hereinafter "Key Log #2) was DIFFERENT IN A MATERIAL WAY than the one provided by the government on January 11, 2023 (and later in May and June). He then informed undersigned counsel for Capers of this fact.

Specifically, Key Log #2 provided by SCDC on June 15, 2023 shows that Lt. Housey *returned* the 76 key to the control room and that Capers had *returned* his keys from that day as well. See Ex. C, Key Log provided by SCDC.  Key Log #1 produced by the government (1/11/23, 5/22/23 and 6/8/23) is blank in those same places to indicate that Housey and Capers did not turn in their respective keys.

The Government had argued in its pre-trial brief that Housey had given Capers the "76 key", or "lieutenant's key", and that Capers had then given it to Bailey.  See pre-trial brief at p.

3-4. This key would allow access into the area where the bag with the drugs was found. The government's theory was that the passing of this key from Housey to Capers to Bailey showed a conspiracy between Capers and Bailey to bring drugs into the prison.

The government had planned to introduce Key Log #1 as Exhibit 2 in the upcoming trial. This exhibit would have been false and is material to the question of whether Bailey and Capers acted in concert to introduce drugs into the prison. The fact that Housey had returned the key (and NOT given it to Capers) and the fact that Capers had turned in his keys go to the material elements of whether a conspiracy existed and whether Capers had any knowledge about what was inside the backpack.

### III.    Argument

*Brady* and its progeny make it abundantly clear that withholding exculpatory evidence is a due process violation. "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* at 87.

It is a violation of due process even when the prosecutor acts in good faith. It is also a violation of due process even when the prosecutor has no knowledge of the exculpatory evidence. See *Kyles v. Whitley,* 514 U.S. 419, 438 (1995) (government held accountable under *Brady* for evidence known only to police investigators and not the prosecutor). The obligation to disclose is measured by "the character of the evidence, not the character of the prosecutor." *United States v. Agurs*, 427 U.S. 97, 110, (1976).

Thus, the individual prosecutor has a duty to learn of any favorable evidence knon to others acting on behalf of the government. See Strickler v. Greene, 527 U.S. 263, 281, (1999) and

*United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006). "*Brady* and *Giglio* impose obligations not only on the prosecutor, but on the government as a whole." United States v. Blanco, 392 F.3d 382, 394 (9th Cir. 2004).

Key Log #2, which currently is in the custody of SCDC at the Ridgeland prison, shows that the 76 key had been returned by Housey. It also shows that Capers had dutifully returned his own keys at the end of his shift. This evidence was in the possession of the government's agents who have been assisting them in the investigation of their case. This includes SCDC Special Agent James "Rusty" Davis, Contraband Investigator (and witness in the case) Lt. Edward Mole, and any other correctional officers who had custody and control of the key log. The government failed to produce it, and it is clearly material to issues in the case.

Finally, the Court does have the power to grant a dismissal with prejudice if exculpatory information is not revealed until the trial is underway. "A district court may dismiss an indictment for government misconduct for one of two reasons, each with its own standard: either because it finds a serious due-process violation or because it concludes that dismissal is warranted under its supervisory powers." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020). The Court should do so because a serious due-process violation has occurred and because it should not countenance such a lack of oversight by the government in this case.

### IV.    Conclusion

The government's agents failed to produce a document that is exculpatory and contradicts its own theory of the case as presented in its pre-trial brief. It had a duty to turn over this material and failed to do so. For these reasons, the Court should dismiss the indictment against Mr. Capers.

Respectfully submitted,

*/s/ Cody J. Groeber*

                                                  Cody J. Groeber, Esquire
                                                  Assistant Federal Public Defender
                                                  145 King Street, Suite 325
                                                  Charleston, SC 29401
                                                  Attorney ID# 12186

June 19, 2023